Ketcham, Adm'x, *v.* Hill.

*J. E. McDonald, J. M. Butler,* and *S. C. Willson,* for appellant.

*P. S. Kennedy* and *J. McCabe,* for appellee.

————◆————

## Ketcham, Adm'x, *v.* Hill.

JUDGE.—*Bill of Exceptions.*—A person who has been a judge, and presided at the trial of a cause, possesses no power to sign a bill of exceptions in such cause after he has ceased to be a judge.

SAME.—The successor in office of such judge has full power to sign a bill of exceptions embodying the evidence, and this court is bound to presume that in exercising such power he acted upon reliable information.

WITNESS.—*Assignor.*—*Claim Against an Estate.*—Where one sues as assignee upon an account, or upon a note equitably assigned, and makes the assignor a party to answer as to his interest, the assignor and assignee are not adverse parties; their interests are identical; and where the cause of action is filed as a claim against an estate, the assignor cannot testify as a witness for the assignee.

STATUTE OF LIMITATIONS.—*New Promise.*—*Acknowledgment of Debt.*—*Evidence.*—No acknowledgment of a debt barred by the statute of limitations, or promise to pay it, is sufficient to take the case out of the operation of the statute, unless the same be contained in some writing signed by the party to be charged thereby. It is not competent to prove such acknowledgment or promise by parol.

SAME.—*Part Payment.*—*Parol Evidence.*—Part payment may be proved by parol.

SAME.—An admission of continued indebtedness may be inferred from the fact of part payment; but the court is not allowed to imply such admission as an inference of law. It must be left to the jury.

SAME.—Part payment is only *prima facie* evidence of an admission of continued indebtedness, and may be rebutted by other evidence and the circumstances under which it was made.

Ketcham, Adm'x, *v.* Hill.

SAME.—In order to take a case out of the statute of limitations by part payment, the payment must have been on account of the debt for which the action is brought.

SAME.—The force and effect of part payment is the same under the code that it was at common law, but no indorsement or memorandum of any payment, made upon any instrument of writing, by or on behalf of the party to whom the payment purports to be made, will be deemed sufficient to take the case out of the operation of the statute.

APPEAL from the Marion Common Pleas.

BUSKIRK, J.—James B. Hill filed a claim against the estate of John L. Ketcham, deceased, on an account against Ketcham in favor of his father, John F. Hill, for goods sold and delivered and money collected. Account assigned in writing, but not sworn to. Defendant filed answer in seven paragraphs, viz.: 1st. General denial. 2d. Denying that plaintiff is the real party in interest, and alleging that it was assigned to him by his father, John F. Hill, in order to enable him to testify, under an understanding that the assignor should have the benefit of any judgment that might be rendered. 3d. Payment. 4th. Statute of limitations. 5th. Plea in abatement, that decedent's partner's (Coffin's) personal representatives should be made parties defendants. 6th. Partial answer, that certain items were bought for one John Ketcham, and not for his own use. 7th. As to part of claim, plea of statute of frauds, that goods were sold to another party and no agreement in writing to answer for his debt or default.

Plaintiff filed a reply in five paragraphs, viz. : 1st. General denial. 2d. Reply to 4th paragraph of answer, acknowledgment of indebtedness and partial payment within six years. 3d. Reply to 5th paragraph of answer, that Coffin had long since deceased, and his estate been settled as insolvent. 4th. Reply to 6th paragraph of answer, that goods were charged to decedent by his own directions, and that assignor did not know they were for any other person. 5th. Reply to 7th paragraph of answer, that goods were purchased by decedent and by him directed to be charged against him.

VOL. XLII.—5

Cause submitted to Court for trial; finding for plaintiff in the sum of $101.37. Defendant filed a motion with reasons for new trial, viz.: 1. Errors of law occurring on trial and excepted to at proper time, to wit : 1st. Permitting the assignor of the account, John F. Hill, to testify as a matter of right. 2d. Allowing the plaintiff to give in evidence the testimony of the assignor as to conversations had with the decedent in his lifetime. 3d. Allowing plaintiff to introduce proof of a contract, not in writing and signed by the decedent, to take the case out of the operation of the statute of limitations. 2. The verdict is contrary to law. 3. The verdict is contrary to evidence. 4. The verdict is not sustained by sufficient evidence. Which motion the court overruled, and defendant excepted. Court orders administratrix to pay sum found due plaintiff out of the assets of the estate.

The appellant has assigned for error the overruling of the motion for a new trial.

It is claimed by counsel for appellant that a new trial should have been granted upon the grounds :

First. That the court erred in permitting the assignor of the account, John F. Hill, to testify on the trial, as a matter of right.

Second. That the court erred in allowing the plaintiff to give in evidence the testimony of the assignor as to conversations with the deceased during his lifetime.

Third. That the court erred in allowing the plaintiff to introduce proof of a contract, not in writing and signed by the decedent, to take the case out of the operation of the statute of limitations.

Before considering the questions presented by the assignment of errors, we are required to decide a motion submitted by the appellee, which is as follows :

" The appellee moves the court to strike out and reject from the record in this cause the paper purporting to be a bill of exceptions, for the reasons following :

" 1. The said paper was and is not signed by any person legally authorized to sign the same.

" 2. The said Solomon Blair, the Judge before whom the said cause was tried, before signing said paper, had resigned the office of Common Pleas Judge, and had been appointed and was qualified as Judge of the Superior Court of Marion County, Indiana; and at the time of signing said paper was Judge of said Superior Court.

" 3. The said Livingston D. Howland, whose name appears to said paper, was not Judge at the time of the trial, nor until after the resignation and appointment of said Blair to said office of Judge of said Superior Court.

"N. B. & E. TAYLOR,
" Att'ys for Appellee."

It is shown by the record that the cause was tried before the Honorable Solomon Blair, Judge of the Marion Common Pleas Court. The bill of exceptions is signed as follows:

" SOL BLAIR, Judge
" Sitting at time of trial.
" LIVINGSTON HOWLAND,
"Judge."

It was decided by this court, in *Smith* v. *Baugh*, 32 Ind. 163, that a person who had been judge and had presided at the trial of the cause possessed no power to sign a bill of exceptions, in such cause, after he had ceased to be judge.

Such ruling is founded on sound reason and is supported by authority, and settles the question that Judge Blair possessed no power to sign the bill of exceptions in the present case, when he had ceased to be the Judge of the Marion Common Pleas Court.

It remains to inquire whether his successor in office, Judge Howland, who had not presided at the trial and had no personal knowledge of what the evidence was upon the trial, could sign a bill of exceptions embodying the evidence.

We are referred by counsel for appellee to section 346, 2 G. & H. 209, and to *Halstead* v. *Brown*, 17 Ind. 202, as supporting his position, that Judge Howland possessed no power

to sign such bill of exceptions. Section 346 of the code reads as follows :

"Sec. 346. Where the decision is not entered on the record, or the grounds of objection do not sufficiently appear in the entry, the party excepting must reduce his exception to writing, and present it to the judge for his allowance and signature. If true, the judge shall sign it, whereupon it shall be filed with the pleadings as a part of the record, but shall not be spread at large on the order book. If the writing is not true, the judge shall correct it, or suggest the correction to be made and sign it."

In *Halstead* v. *Brown, supra,* this court said :

"A bill of exceptions was corrected and signed by the judge who tried the cause.

"The appellant contended that the bill was incorrect, and procured a mandate from the Supreme Court to the judge below to correct it, or show cause, etc. The mandate was served, but no return was made by the judge. On a rule for attachment, the return was, that the judge was dead. If the judge who tried the cause could have corrected the bill without the consent of both parties, a point we do not decide, (see *Heaston* v. *The Cincinnati, etc., R. R. Co.,* 16 Ind. 275) we think no other judge could, and that the remedy in that particular was at an end. See Perk. Prac. 312 ; *Ex parte Bradstreet,* 4 Pet. Sup. Ct. (U. S.) Rep., p. 102. The judge signs, or refuses to sign, a bill of exceptions upon his own recollections of the facts of the case, refreshed as it may be from any sourses existing."

The only point decided in *Heaston* v. *The Cincinnati, etc., R. R. Co., supra,* at all bearing upon the question under examination is, "that the court can not legally alter the record of its proceedings after the term, and that a bill of exceptions can not be altered."

The only point decided in *Ex parte Bradstreet, supra,* was, that the Supreme Court would not compel a District Judge to sign a bill of exceptions which he did not believe to be true, he having already signed one which he believed spoke

the truth.   Mr. Chief Justice MARSHALL, in very strong and decided language, expressed his disapproval of the practice of presenting bills of exceptions to a judge weeks after the trial and asking him to correct them from memory.   He very correctly said, that "the law requires that a bill of exceptions should be tendered at the trial.   But the usual practice is to request the judge to note down in writing the exceptions, and afterward, during the session of the court, to hand him the bill of exceptions, and submit it to his correction from his notes.   If he is to resort to his memory, it should be handed to him immediately, or in a reasonable time after the trial.   It would be dangerous to allow a bill of exceptions of matters dependent on memory, at a distant period, when he may not accurately recollect them.   And the judge ought not to allow it."

It is very correctly maintained by counsel for the appellant, that Judge Howland, possessed full and ample power to sign the bill of exceptions ; and the case of *Smith* v. *Baugh*, *supra*, is relied upon as being decisive of the question in their favor.

In that case the cause was tried before Judge Park, who gave time until the first day of the next term to prepare and present the bill of exceptions.   In the mean time, Judge LaRue became the judge of said court.   The bill of exceptions was signed by Judge Park after he had ceased to be judge, and Judge LaRue had been qualified and was acting as such.   The court held that the bill of exceptions "was without authority of law and void."   The court then say : "A change of the judge, after judgment, and before the bill of exceptions was signed, did not change the court; for all judicial purposes it remained the same, and the succeeding judge of the court might, within the time limited, have settled and signed the bill of exceptions: *Hedrick* v. *Hedrick*, 28 Ind. 291."

The case of *Hedrick* v. *Hedrick*, *supra*, was an action for a divorce.   There was issue, trial by a jury, finding for plaintiff, and answer to interrogations.   These proceedings were

had before Judge Gooding. After verdict, and before final decree, Judge West succeeded Judge Gooding. Judge West, without hearing any evidence, rendered a final decree granting a divorce and allowing alimony and providing for the custody of the children. This court affirmed the judgment, and held that "the change of judges did not change the court; for all judicial purposes that remained identical."

The case of the *Life and Fire Insurance Company of New York* v. *Wilson's Heirs*, 8 Peters, 291, is much in point, and has an important bearing upon the case in judgment. The case was tried before the District judge of Louisiana, and a judgment was rendered and entered upon the order book, but the judge who tried the cause died without signing the judgment. The judge appointed to succeed such deceased judge refused to sign the judgment upon the ground that he possessed no power to do so. The plaintiff sought by *mandamus* to compel him to sign it. The Supreme Court compelled the judge to sign the judgment.

The court say :

"In this case the district judge seems to think, that as the judgment was not rendered by him, he has no power to grant a new trial, as he is not acquainted with the facts and circumstances which should influence his discretion in making such an order; and that, consequently, he is not bound to sanction the judgment, by his signature.

"By the law of Louisiana, and the rule adopted by the district court, the judgment, without the signature of the judge, cannot be enforced. It is not a final judgment, on which a writ of error may issue, for its reversal. Without the action of the judge, the plaintiffs can take no step, unless it be the one they have taken, in this case. They can neither issue execution on the judgment, nor reverse the proceedings by writ of error. And if the reasons assigned by the judge shall be deemed a sufficient answer to the rule, the plaintiffs are without remedy on their judgment.

"But the district judge is mistaken in supposing that no one but the judge who renders the judgment can grant a

new trial. He, as the successor of his predecessor, can exercise the same powers, and has the right to act on every case that remains undecided upon the docket, as fully as his predecessor could have done. The court remains the same, and the charge [change] of the incumbents cannot and ought not, in any respect, to injure the rights of litigant parties."

The foregoing authorities conclusively settle the doctrine that Judge Howland was authorized to exercise the same powers, and had the right to act on any case that remained undecided upon the docket, as fully as his predecessor could have done. If a judge who has not heard the evidence on the trial of a cause can render judgment, grant a new trial, and sign the record of a judgment rendered by his predecessor, he surely can settle and sign a bill of exceptions. We entertain no doubt as to his power to do so, and the only difficulty we see in the exercise of such power results from the want of correct knowledge as to what the testimony had been upon the trial. Where a judge has exercised such power, we are bound to presume that he acted upon reliable information, for he is not required by the above quoted section of the code to sign a bill of exceptions unless it is true. We are, therefore, of opinion, that the bill of exceptions is properly in the record, and that the motion of appellee should be overruled.

We proceed to consider the errors assigned, and the first question presented for our decision is, whether the court erred in permitting John F. Hill, the assignor of the account, to testify as a witness for the assignee as a matter of right.

The positions assumed by counsel for appellant are stated as follows, in their brief:

"In discussing this question, we desire to refer to some of the principles of construction, as laid down by the elementary writers on that question, and the decisions of our own and other courts on the same point. Blackstone says (vol. 1, p. 87): 'There are three points to be considered in the construction of all remedial statutes ; the old law, the mischief, and the remedy; that is, how the common law

stood at the making of the act; what the mischief was, for
which the common law did not provide; and what remedy
the parliament hath provided to cure this mischief. And it is
the business of the judges so to construe the act as to sup-
press the mischief and advance the remedy.'

"Kent says (vol. I, p. 461): 'It is an established
rule in the exposition of statutes, that the intention of the
lawgiver is to be deduced from a view of the whole, and
every part of a statute, taken and compared together. The
real intention, when accurately ascertained, will always pre-
vail over the literal sense of terms.' In the *United States*
v. *Collier*, 3 Blatchf. C. C. 325, Judge BETTS says:

"'The intention which forms the governing principle of
the law is to be extracted from the entire enactment; and,
to ascertain the legislative will, courts not only search all the
provisions of the particular statute, but may look out of that
to others *in pari materia*, or of a similar purport,' etc. In
*People* v. *Dana*, 22 Cal. 11, Judge COPE, C. J. FIELD con-
curring, says: 'It is a cardinal rule of interpretation that
a statute must be construed with reference to the objects
intended to be accomplished by it.' In Potter's ed. of Dwar-
ris' work on statutes, we find a collation of rules of differ-
ent authors, to which we refer. Rule 20, p. 128. Vattel
says: 'The reason of the law or treaty, that is, the motive
which led to making of it, is one of the most certain means
of establishing the true sense; and great attention ought to
be paid to it whenever it is required to explain an obscure,
equivocal, and undetermined point, or to make an application
of them to a particular case. As soon as we certainly know
the reason, which alone has determined the will of him who
speaks, we ought to interpret his words, and to apply them
in a manner suitable to that reason alone.' Also, in rule
23, p. 129: 'To violate the *spirit* of the law by pretending to
respect its letter, is a fraud no less criminal than an open
violation of it. It is not less contrary to the intention of
the legislature, and only shows a more artful and deliberate
malice.' Puffendorf says (p. 133 of same): 'It gives great

light to the interpretation of obscure passages, to compare them with others that have some affinity with them; or to compare them with what goes before or follows in the context. *  *  *  *  . That which helps us most in the discovery of the true meaning of the law, is the reason of it, or the cause which moved the legislator to enact it. This ought not to be confounded with the mind of the law; for that is nothing but the genuine meaning of it; for the finding out of which, we call in the reason of it to our assistance' Domat says: p. 141, 'Laws which favor  *  * *  *  as well as those intended to favor particular individuals, ought to be interpreted with all the liberality to which these interests are justly entitled, in an equitable point of view, and ought not to be interpreted severely, nor be applied in a manner calculated to prejudice the persons intended to be favored.'

" The following rules are given by the author as general rules in America: Rule 4, p. 144. 'It is the duty of courts so to construe statutes as to meet the mischief and to advance the remedy, and not to violate fundamental principles.' Rule 7, Ib. 'The intention of the legislature may be found from the act itself, from other acts *in pari materia*, and sometimes from the cause or necessity of the statute; and wherever the intent can be discovered, it should be followed with reason and discretion, though such construction seem contrary to the letter of the statute; this is the rule where the words of the statute are obscure.' Rule 8, Ib. 'A thing within the intention, is within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention.' Rule 12, Ib. 'In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize if practicable, and give a sensible and intelligent effect to each.' Rule 17, p. 145: 'All statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time.' Rule 18, Ib. 'Statutes are to be interpreted

with reference to the principles of the common law in force at the time of their passage, except when the statute itself or the courts have otherwise determined, and this rule is the same in courts of equity as of law.'

" From these authorities, we feel justified in assuming the following propositions to be the law on this point: 1st. That the courts will examine all statutes *in pari materia*, for the purpose of discovering what was intended to be declared by a particular statute. 2d. That the courts will, in the construction of statutes, allow the intention to govern, if such an intention can be discovered, with especial reference to advancing a remedy, or doing away with an evil. With these propositions to assist us, we call the attention of the court to the enactments of the legislature on the subject of evidence. Prior to 1852, our courts were governed substantially by the common law rules of evidence, but experience had taught that the rule might be extended, leaving it for a jury to decide how much truth and falsehood a man convicted of a crime or shadowed by a seeming interest would weave into his story; but they still left up the barriers as against parties to the suit, and those whom their condition had indissolubly joined together. 2. R. S. 238, sec. 80. A few years passed by and the legislature deemed it advisable to again enlarge the rule, and in 1855 allowed certain officers who might be parties to suits, to testify where they were only interested as trustees of certain funds. 2 G. & H. 168, sec. 238. Experience having proved the wisdom of throwing open wide the door for the purpose of arriving at the truth, the legislature, in 1861, again enlarged the rule, and threw down all the barriers that hedged around the witness stand, and allowed every one capable of testifying intelligently to give his knowledge to the jury, leaving it to them to judge of its credibility, but carefully provided in their proviso that this might only be done when both parties could give their version, excluding only those whom the court might judge to be incapable of understanding what they might say, and persons in whom, according to the pol-

icy of the law, professional secrets should remain inviolate. Acts 1861, p. 51 ; 2 G. & H. 168. This, act gave the largest liberty to witnesses that has ever been reached by legislative enactments in this State, and thus it remained for a while, but the experience of four years showed that the bounds had been extended too far, and the legislature amended the act of 1861, by adding the words, 'and in cases where a party to a suit pending in any court in this State, whose deposition has been taken in such suit, and is on file in such court, dies, and such suit is prosecuted by or against the executor, or administrator of such deceased party, the opposite party shall be allowed to testify on the trial of the cause, and such deposition may be read in evidence by, and on behalf of the representative of such deceased party : And provided further, That in all suits by or against heirs, founded on a contract with or demand against the executor, the object of which is to obtain title to, or possession of land or other property of such ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify as a witness as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party ; and the assignor of the plaintiff in any such suit where there has been an assignment of the cause of action shall be deemed and held to be a party within this provision.' Acts 1865, Spec. Ses., p. 160–1–2. This was a very material alteration of the act of 1861, in two particulars ; first, it extended the provision from executors, administrators, and guardians to heirs; and, second, it provided by legislative enactment, what. has always been a rule of law, that no man can do indirectly that which the law forbids him to do directly ; that a person can not render himself competent as a witness by assigning his cause of action, and ceasing to be a party to a suit. But the legislature did not stop here. Experience had shown that in spite of all previous precautions parties had succeeded in getting in their own testimony against the sealed lips of the dead, and in 1867, the last act in reference to witnesses was passed, by which the rule allowing parties to testify.

where the deposition of the decedent had been taken and filed was so abridged that the living was only allowed to speak concerning those matters of which the dead had left his knowledge on record. If there is any principle to be gathered from all these acts of the General Assembly, it is that so well expressed by Judge GREGORY of the last Supreme Bench in the case of *Malady* v. *McEnary*, 30 Ind. 273, when he said: ' The evident intent. was, in suits by or against heirs, to exclude the testimony of the parties to the action as to any matter which occurred prior to .the death of the ancestor, so as to prevent the living from testifying against the representative of the dead. Death having sealed the lips of one, the law seals the lips of the other.' The marked haste with which successive legislatures retraced the steps that had been taken by preceding ones, and in this particular direction alone, prove this more conclusively than words of ours can do.

" But it was argued below and will, we presume, be argued here, that whatever may have been the secret intention of the legislature, its legal intentions are only to be gathered from the words of the enactment, and that these words refer solely to the cases of suits directly against heirs, and can not be made to apply to those of personal representatives; and taking the language of the last proviso by itself, we confess that there seems to be at first glance an appearance of plausibility in it; but we have seen that courts will not confine themselves to the language of any one part of a statute, or any one statute even, but will examine every part of all the statutes bearing on the question, to determine, in the language of Blackstone, ' the mischief and the remedy,' and finding, according to Potter, *supra*, that ' a thing within the intention is within the statute, though not within the letter,' will have no hesitation in saying that it has been the expressed intention of the law-making power in this State to throw open to its widest extent the door for the discovery of truth, where it can be done without giving an undue advantage to one party, but that it has been as earnestly

their endeavor to see that in this matter both parties should be placed on a perfect equality, so that where by the act of God the one party has been prevented from relating his version of the matters in controversy, by the act of the law-making power the other party is required to keep silence and be heard only through the mouths of the witnesses, unless the court trying the cause shall, in the exercise of a sound discretion, deem it advisable to call the party to the witness stand."

We have, after much reflection, and upon very mature consideration, arrived at the conclusion, that the words, "and the assignor of the plaintiff in any such suit, where there has been an assignment of the cause of action, shall be deemed and held to be a party within this provision," apply to both the provisos contained in said section.

The second section of the act of March, 1867, reads as follows :

" Sec. 2. Persons insane at the time of examination, children under ten years of age, and incapable of properly understanding the facts about which they are examined, husband and wife as to matters for or against each other, or as to communications made to each other during marriage, except that the wife shall be a competent witness in cases of prosecutions against the husband for assault and battery upon the person of his wife, and except also that in suits by the husband and wife jointly for an assault and battery upon the wife, such wife shall be a competent witness to prove the assault and battery. Attorneys at law, as to confidential communications from a client, or advice given to such clients ; physicians, as to matters confided to them in course of their profession ; clergymen, concerning any confessions made to them in course of discipline enjoined by the church, shall not in any case be competent witnesses, unless with the consent of the party making such confidential communication : Provided, That in all suits where an executor, administrator, or guardian, is a party in a case where a judgment may render either for or against the estate represented by such exec-

utor, administrator or guardian, neither party shall be allowed to testify as a witness unless required by the opposite party, or by the court trying the cause, except in cases arising upon contracts made with the executor, administrator or guardian of such estate, and in cases where a party to a suit pending in any court in this State, whose deposition has been taken in such suit, and is on file in such court, dies, and such suit is prosecuted by or against the executor or administrator of such deceased party, the opposite party shall be allowed to testify, on trial of the cause, on all material points and matters of fact embraced in the deposition, and on no other facts, and such deposition may be read in evidence by and on behalf of the representatives of such deceased party: And provided further, That in all suits by or against heirs, founded on a contract with, or demand against, the ancestor, the object of which is to obtain title to, or possession of, land or other property of such ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify as a witness as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party or by the court trying the cause, and the assignor of the plaintiff in any such suit, where there has been an assignment of the cause of action, shall be deemed and held to be a party within this provision."

The first section of said act declares who are competent witnesses. The first part of the second section renders certain persons incompetent to testify in any case, and upon any subject. It is then provided, that confidential communications made to attorneys, physicians, and clergymen shall not be disclosed without the consent of the party making them. Then follows the proviso in reference to witnesses in suits where an executor, administrator, or guardian is a party, and this is followed by the words, " and provided further, that in all suits by or against heirs," etc. The section then closes with the sentence in relation to the right of the assignor to testify " in any such suit." It is urged by counsel for appellee that the word " *provision*" limits the operation of the

last clause of the section to suits by or against heirs. · It does not necessarily result from the fact the words, "and provided further," are used, that they are to be regarded as separate and distinct provisos. They both relate to the same subject-matter, the competency of parties to testify in certain suits. The one relates to suits where an executor, administrator, or guardian is a party, and the other to suits by or against heirs. The plain and obvious purpose of the legislature was to prevent one party from testifying where the other party to the contract or transaction was dead. The first section of the act removed the disabilities of parties and rendered them competent witnesses. The purpose of the legislature was to limit and restrain the operation of the first section and prevent it from applying in all suits where an executor, administrator, or guardian is a party, and in all suits by or against heirs. Judge STORY, in *Minis* v. *The United States*, 15 Pet. 423, thus defines a proviso. He says : "The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview."

The word "provision" will apply to the one class of suits as well as to the other. In fact, there is greater reason, in the administration of justice, for excluding the assignor of a claim against the estate of a decedent from testifying, than there is in actions by or against heirs. The former class of suits are much more frequent than the latter. But they both come within "the mischief to be remedied." This, too, is the grammatical sense of the words of the entire proviso, in the order in which they stand, for it is all embraced in one sentence, and is so connected as to form but one entire sentence.

But, conceding that we may be mistaken, in holding that the sentence under examination applies to all suits where an executor, administrator, or guardian is a party, we entertain no doubt that the assignor of a claim against the estate of a

decedent is excluded by the spirit and intent of the act. The assignment of an account, under the code, does not vest the legal title in the assignee. It is a mere equitable transfer, which does not authorize the assignee to maintain an action in his own name, without making the assignor a party to answer as to his assignment or interest in the claim. The assignor does not warrant the solvency of the claim, nor is he responsible to the assignee if he fails to collect the account. The account of itself proves nothing. The making out of an account against the estate of a decedent, its assignment, and the filing of the same, create no legal liability. The correctness of the claim must be proved by competent and sufficient evidence, before the court can allow the same. When the assignee sues upon an assigned account or upon a note equitably assigned, and makes the assignor a party, to answer as to his interest therein, the assignor and assignee are not adverse parties. Their interests are identical. This was so decided by this court, in *Cox* v. *Davis,* 16 Ind. 378, under the act of 1855, which authorized adverse parties to call upon each other to testify. The court held, that although they occupied nominally adverse positions on the record, but really their interests were identical, and not adverse, hence, Sample, the assignor, was not a competent witness for the plaintiff to prove the alleged claim. The same principle applies here and excludes the assignor, the object of both statutes being to prevent one side of the case from being shown by a party directly interested in having the same made out, where the other side could not have that advantage.

To hold otherwise, would be a clear evasion of the statute, and would defeat its whole purpose and intent. It would open the door to the most monstrous wrongs. The assignment of claims would become frequent, and estates would be wasted, eaten up, and ruined by stale and dishonest claims. We are very clearly of the opinion that the court erred in permitting John F. Hill, the assignor of the claim, to testify as a witness in behalf of the assignee.

It is next insisted by the counsel for appellant that the court erred in permitting the appellee to prove by parol an acknowledgment of the correctness of the account and the payment of the sum of two dollars on the claim, for the purpose of taking the case out of the operation of the statute of limitations.

No acknowledgment of, or promise to pay, a debt barred by the statute shall be sufficient to take the case out of the operation of the statute, unless the same shall be contained in some writing, signed by the party to be charged thereby. It is not competent to prove such acknowledgment or promis, by parol.

Part payment may be proved by parol. An admission of continued indebtedness may be inferred from the fact of part payment; but the court is not allowed to imply such admission as an inference of law. It must be left to the jury. It is only *prima facie* evidence, and may be rebutted by other evidence, and by the circumstances under which it was made. Further, in order to take a case out of the statute by part payment, it must appear that the payment was made on account of the debt for which the action is brought. The force and effect of part payment is the same under our code that it was at common law, but no indorsement or memorandum of any payment made upon any instrument of writing, by or on behalf of the party to whom the payment shall purport to be made, shall be deemed sufficient to take the case out of the operation of the statute. *Kisler* v. *Sanders,* 40 Ind. 78.

The court manifestly erred in overruling the motion for a new trial.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*J. L. Mitchell* and *W. A. Ketcham*, for appellant.

*N. B. Taylor* and *E. Taylor*, for appellee.