## McBRIDE, EXECUTOR, v. ULMER.

[No. 4,323.  Filed December 12, 1902.]

LIMITATION OF ACTIONS.—*Executors and Administrators.*—*Claims Against Decedents' Estates.*—The statute of limitations is available as a defense to a claim against a decedent's estate without being specially pleaded. *p. 155.*

SAME.—*Executors and Administrators.*—*Claims Against Decedents' Estates.*—In the trial of a claim against a decedent's estate which the defense claimed was barred by the statute of limitations, evidence of statements made by deceased relative to the debt could not establish an acknowledgment or promise as evidence of a new or continuing contract, the same not being in writing as required by §302 Burns 1901. *pp. 155-160.*

SAME.—*Executors and Administrators.*— *Claims Against Decedents' Estates.*—Evidence in a claim against a decedent's estate that decedent remitted a debt against claimant's husband and in so doing proposed to relieve himself of a part of his debt to claimant will not operate to remove the bar of the statute of limitations to the claim, where it was not shown that the proposition was accepted by claimant, or by anyone representing her. *pp. 155-160.*

From Wells Circuit Court; *E. C. Vaughn*, Judge.

Claim by Sarah M. Ulmer against William W. McBride as executor of the will of Jacob Stroop, deceased. From a judgment for plaintiff, defendant appeals. *Reversed.*

*J. S. Dailey, Abram Simmons* and *F. C. Dailey*, for appellant.

*W. H. Eichhorn* and *M. W. Walbert*, for appellee.

BLACK, P. J.—The claim of the appellee Sarah M. Ulmer against the appellant as executor of the last will and testament of Jacob Stroop, deceased, was for money received by the deceased in his lifetime, in February, 1876, from the claimant, which he then promised to pay her, in the sum of $500 and for interest thereon at six per cent. per annum until October 1, 1899, in the sum of $707.50; the total amount of principal and interest to that date being $1,207.50, with a credit, "by cash allowance of rent made

October 1, 1899," the claim being for the balance with interest thereon from that date, the proceedings upon the claim being commenced January 23, 1901, the testator having died in December, 1900. Upon trial by jury there was a verdict in favor of the claimant for $952.66, for which sum, the appellant's motion for a new trial having been overruled, judgment was rendered in favor of the appellee.

The defense of the statute of limitations was available on the trial without being pleaded by the executor. §2479 Burns 1901; *Zeller* v. *Griffith,* 89 Ind. 80; *Pence* v. *Young,* 22 Ind. App. 427.

Among the provisions of our civil code relating to the limitation of actions, it is enacted that no acknowledgment or promise shall be evidence of a new or continuing contract, whereby to take the case out of the operation of the provisions of the statute, unless the same be contained in some writing signed by the party to be charged thereby. §302 Burns 1901. It is also provided (§304 Burns 1901): "Nothing contained in the preceding sections shall take away or lessen the effect of any payment made by any person," etc. Evidence which was introduced of statements of the debtor at various times, whatever the purpose of the introduction thereof, could not establish an acknowledgment or promise as evidence of a new or continuing contract, in the sense of §302, *supra;* such statements being not in writing, but oral expressions in conversations.

It was sought to take the case out of the operation of the statute by evidence relating to the alleged part payment credited in the statement of claim. The existence of the indebtedness of the testator to the appellee, contracted, without writing, in 1876, was sufficiently proved. The evidence showed that in September, 1899, the testator, father of the appellee, visited the farm, which he owned, on which the appellee and her family, including her husband, resided; that on that occasion there was a conversation between the testator and the appellee's husband near a corncrib on the farm,

no other person being present, except a lad,—Irvin Ulmer, son of the appellee. Concerning this conversation Irvin Ulmer testified that his father, the husband of appellee, asked the testator "for the money,—for a part of ma's money; and he told him that he would allow her $250, which is rent, on her money, to help to buy the place on which we live now." He also testified that his father at that time was looking after a farm, and that the family moved January 12, 1900, from the farm where this conversation took place. He further testified on cross-examination that the testator allowed the appellee's husband a credit of $250, rent which he owed to the testator, on what the testator owed the appellee, and that the testator said he would allow her rent; that he would allow her on what he owed her, $250, rent that the appellee's husband owed to the testator. This witness also testified that on November 14, 1899, his father bought what was known as the "Shoemaker land." A deed of conveyance for forty acres of land in Wells county from Jane Shoemaker and Warren K. Shoemaker to Margaret Ulmer, for the expressed consideration of $1,200, dated November 13, 1899, was introduced in evidence. Margaret was one of the Christian names of the appellee. Anna Worth, a sister of the appellee, testified that in June, 1900, she had a conversation with the testator, no other person being present, in which he said: "Anna, did you know Mag had bought a place?" and the witness said, "I heard so," and the testator said, "I gave her $250 on her $500." John Ulmer, a brother of the appellee's husband Philip Ulmer, testified that in 1899, while riding with the testator in a buggy, they had a conversation in which witness said he understood that Philip bought him a farm, and the testator said, "Yes, he has." The witness said that he did not know that Philip was able to buy a farm yet, and the testator said, "Yes, I helped him some. I allowed him the rent on this farm down here where Philip lived, of $250, towards what I owed Mag, to pay on that."

Part payment does not create a new debt, but it revives the old one; and the action is properly brought, as here, upon the original debt. The principle upon which a part payment takes a case out of the statute is that it admits a greater debt to be due at the time of the part payment. Parke, B., in *Tippets* v..*Heane,* 1 Cr. M. & R. 252; *Conwell* v. *Buchanan,* 7 Blackf. 537.

Words not written and signed can not constitute a sufficient admission, but the act of payment in part, with its illustrative circumstances, including accompanying words, evidences the admission. The admission of continued indebtedness may be inferred as a matter of fact, and not of law, from the fact of part payment. *Mozingo* v. *Ross,* 150 Ind. 688, 41 L. R. A. 612, 65 Am. St. 387; *Ketcham* v. *Hill,* 42 Ind. 64.

"In order to make a money payment a part payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to, and accepted by the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder." Wood, Limitations (3d ed.), §97. The payment must be made to the creditor or to some one lawfully acting in behalf of the creditor. *Kisler* v. *Sanders,* 40 Ind. 78-83.

If the creditor receive anything of value upon agreement between him and the debtor that its transfer shall reduce the debt, this will be a sufficient part payment to take the debt out of the statute. But there must be some transaction between the parties, such that the facts thereof would be available to establish on behalf of the debtor a defense of part payment in a subsequent action brought by the creditor for the recovery of the entire debt. If, by agreement, money is paid by a debtor, on behalf of the creditor to a third person, this may be sufficient part payment as between the

debtor and the creditor. *Worthington* v. *Grimsditch,* 7 Q. B. (53 Eng. C. L.) 479.

It would seem, if, by agreement between the debtor and the creditor, by way of reducing the amount of the debt, the former releases a smaller debt due him from a third person, this might operate as a part payment within the rule, and take the debt out of the statute. When the payment is made to a third person without authority to receive it, if the creditor ratifies it, it will operate to remove the bar of the statute. But a mere delivery of money to a third person to be paid over to the creditor on the debt is not alone sufficient. Wood, Limitations (3d ed.), §103; *Stamford, etc., Banking Co.* v. *Smith,* (1892) 1 Q. B. 765.

If money was paid to or for the appellee by her husband, such payment would not take the case out of the statute, unless it was paid by him on behalf of the testator, as his agent, and on account of the testator's indebtedness to the appellee. *Harding* v. *Edgecumbe,* 28 L. J. Exch. 313. The appellee's chose in action was her separate property, as if she were sole, under our statute.

Statements of the debtor at times other than that at which he made the partial payment could not of themselves constitute promises or acknowledgments. If a promise or acknowledgment to a stranger may be available, sufficient to revive the debt, these statements, not being in writing signed by the debtor as the statute requires, could be valuable only as admissions to show the intention of the debtor himself at the time he made the payment. See *Brudi* v. *Trentman,* 16 Ind. App. 512. A payment must be proved as a fact; evidence of the debtor's mere parol statement of the making by him of a payment is not alone sufficient. That would leave the revival of the debt, otherwise barred, to rest wholly on evidence of words.

On the occasions, shown in the evidence, when the subject of the alleged part payment was mentioned the appellee was not present in person, nor was she represented by

any person shown to have authority to contract on her be-
half in relation to that subject.   The alleged part payment
purported to be but a proposed remission of an indebted-
ness of her husband to the testator for rent, the existence
of which indebtedness and the amount thereof were not
otherwise proved.   By such offered remission the testator
proposed to relieve himself of a part of his debt to the ap-
pellee.   It was not shown that his proposal was accepted by
the appellee, or by any person representing her, or claiming
to represent her, or acting in her behalf.   It was not proved
that his proposal was acted upon.   A witness testified that
appellee's husband was already at that time looking for a
place, and that he afterwards bought a farm, and certain
land was soon after conveyed to the appellee by the Shoe-
makers.   It was not shown that the appellee's husband paid
or promised to pay any part of the purchase money as and
for part payment of the testator's debt.   Nor was it shown
how or by whom the land was paid for.   It was not shown
that the proposal of the testator was communicated to the
appellee before or in connection with the purchase or con-
veyance of the land.   She gave a credit in her statement of
claim, but she could not by the giving of credit alone, re-
move the bar of the statute.   *Elliott* v. *Mills,* 10 Ind. 368.

There was no agreement between the testator and the ap-
pellee or her agent concerning the matter of part payment.
If it could be said that appellee's husband was acting as her
authorized agent, he did nothing except the making of a
request for the payment of money by the testator on the
appellee's claim.   If it may be said that the testator author-
ized the appellee's husband to pay to or for the appellee a
certain sum on account of the debt which the testator owed
the appellee, the husband for such purpose would be the
agent of the testator, rather than of the appellee, and it does
not appear that the husband paid or agreed to pay any
amount to or for the appellee as and for a payment upon
the debt of the testator, or, indeed, otherwise.   It must ap-

pear that the payment was made on account of the debt for which the action is brought.    *Carlisle* v. *Morris,* 8 Ind. 421; *Ketcham* v. *Hill,* 42 Ind. 64.

The land may have been paid for by the appellee alone or by her and her husband, or by her husband alone; and whatever he paid, if anything, may have been paid without reference to the debt in suit.    It does not appear that the testator's proposal induced or influenced the purchase of the farm, which seems to have been in contemplation before the proposal was made.    The release of the appellee's husband by the testator from a debt which the former owed the latter would not be a payment to the appellee.    The credit in the statement of claim did not, by its terms, purport to be for a payment of cash to her by any person, but was for cash allowance of rent made October 1, 1899; and the evidence showed the testator's offer to the appellee's husband of an allowance or release to the latter of rent which the husband himself owed to the testator, with a proposal of the testator to the appellee's husband that the offered allowance to him should go upon the debt of the testator to the appellee.    That there was a part payment rests in conjecture, rather than upon evidence of the fact.

Judgment reversed, and cause remanded for a new trial.