MEEHAN, ADMX. *v.* MEEHAN'S ESTATE ET AL.

[No. 14,683.  Filed September 21, 1933.  Rehearing denied December 20, 1933.]

Joseph B. Ross and Stuart, Stuart & Devol, for appellant.

Addison K. Sills, for appellees.

CURTIS, J.—This was an action commenced by the appellant filing against the appellee a claim based upon a promissory note signed by John Meehan in his lifetime, payable to his brother Henry Meehan, dated March 16, 1883, and due in one year after date. The claim was filed November 26, 1928, and was disallowed and transferred to the issue docket for trial. It was then amended and trial was had before the court upon the amended claim. It was defended upon the grounds, first that the note had been paid in full and secondly that it was barred by the statute of limitations. There was a general finding by the court in favor of the appellees and judgment rendered accordingly.

A motion for a new trial was filed timely and over-ruled and an exception taken and this appeal prayed and perfected. The causes in the motion are that the decision of the court is not sustained by sufficient evidence and is contrary to law. The only error assigned and relied upon for reversal is the ruling of the court on the motion for a new trial.

The amended claim, omitting caption and verification, is as follows:

"566.00 Lafayette, Ind., March 16, 1883.

"One year after date I promise to pay to the order of Henry Meehan, Five Hundred and Sixty-six Dollars, at the First National Bank of Lafayette, Indiana. With interest at the rate of 6 per cent from date until paid, and 10 per cent attorney's fees. Value received, without any relief from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note, and all defenses on the ground of any extension of time of its payment that may be given by the holder or holders to them or either of them.

Dated March 16, 1883.

JOHN MEEHAN."

"No. 1, Due March 16/84.

"Claimant alleges that said John Meehan in his lifetime made cash payments upon said note, as set forth by endorsements on the back of said note, as follows, to wit:

ENDORSEMENTS.

March 4, 1903—By cash....................................$25.00
January 30, 1913—By cash.............................$25.00
February 18, 1920—By cash...........................$10.00
January 5, 1924—By cash..............................$15.00
January 25, 1926—By cash.............................$25.00

"Claimant alleges that said note, which is the foundation of this action, provides for the payment of ten (10%) per cent attorney's fees, and that a reasonable attorney fee in this behalf would be ten (10%) per cent of said claim, or a total of two hundred twelve and 42/100 ($212.42) dollars, and that there is now due and payable upon said note, in principal, interest and attorney's fees, the sum of two thousand three hundred thirty-six and 81/100 ($2,336.81) dollars."

The record discloses that the appellant, Anna E. Meehan, administratrix of the estate of Henry Meehan, deceased, is the second administratrix of said estate and that she received her letters on or about March 2, 1928. John Meehan, the maker of the note in controversy, died testate in 1928 and Daniel P. Flanagan was appointed by the Tippecanoe Circuit Court as administrator of his estate with the will annexed. Both of said estates are still pending.

As a preliminary we may say that it is a familiar rule needing no citation of authorities in support of it that this court will not weigh conflicting evidence and substitute its judgment thereon for the judgment of the trial court and if there be competent evidence or legitimate inferences that may be drawn from such evidence to sustain the decision of the trial court, its judgment will not be disturbed on appeal.

The note in question was given by the decedent, John Meehan, to his brother, the decedent, Henry Meehan, and bears date of March 16, 1883. Henry died intestate March 5, 1886, leaving surviving him a widow, Mary A. Meehan, four daughters and one son, Henry, as his sole and only heirs at law. His widow was appointed administratrix of his estate by the Tippecanoe Circuit Court. She filed her inventory and appraisement and the note in question was not included. The usual proceedings were had in the estate and it was closed and the administratrix discharged on the 25th day of April, 1887. In the trial of the instant case the said widow testified that at the time she made the inventory she knew of the occurrence of her husband making a loan to his brother Henry in 1883. She also testified that she found the note along about 1903 in an old book. It is to be noted that the note was not inventoried in the estate of her husband even as a lost note. She testified that she could not find it and that her husband had never

said anything to her about it. She, her daughter Anna, and John Meehan were present she said when the first four payments were made on the note by John Meehan as follows: March 4, 1903, $25.00; January 30, 1913, $25.00; February 18, 1920, $10.00 and January 5, 1924, $15.00. The fifth payment, according to the witness Retta Meehan was made to her on January 25, 1926, and the endorsement placed on the note by Anna Meehan. After the note had been found Harry Meehan, the son of Henry Meehan and one of his heirs at law, and as such entitled to a distributive share of his father's estate, borrowed $50.00 from his uncle, John Meehan, and after some urging finally repaid his uncle without setting off against it the money it is claimed was owing on the note in question. There is evidence that during the times mentioned John Meehan had several thousand dollars on deposit in two of the local banks at La Fayette and owned real estate in said city for about thirty years and that he was angry when the note was first presented to him. He and his said brother had been partners years before. He lived in La Fayette more than twenty years after the lost note had been found.

Both sides agree that partial payments made voluntarily and unconditionally, either before or after the period of limitation, operate to remove the bar of the statute. This general statement of the law is in accord with the authorities. See Wood on Limitations (4th Ed.) 431; *Kisler* v. *Sanders* (1872), 40 Ind. 78; *Ketcham* v. *Hill* (1873), 42 Ind. 64; *Christian* v. *State ex rel.* (1893), 7 Ind. App. 417, 34 N. E. 825; *MacMillan* v. *Clements* (1903), 33 Ind. App. 120, 70 N. E. 997; *Spencer* v. *McCune* (1920), 73 Ind. App. 484, 126 N. E. 30; see also, sections 310-312, Burns 1926.

The theory upon which the above principle and the cases rests is that a debt that is barred by the statute

of limitations is not extinguished; it is simply unenforceable at law, but it is sufficient to constitute a consideration for a promise to pay it. It is equally well established that an admission of continued indebtedness may be inferred from the fact of part payment, but such inference is not one of law, but one of fact to be determined from the evidence. See *Carlisle* v. *Morris* (1856), 8 Ind. 421; *Elliott* v. *Mills* (1858), 10 Ind. 368; *Mozingo* v. *Ross et al.* (1898), 150 Ind. 688, 50 N. E. 867; *Barrett* v. *Sipp et al.* (1911), 50 Ind. App. 304, 98 N. E. 310.

It is also the law that in order to make a money payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor or his representative as such, accompanied by circumstances or evidence amounting to an unqualified acknowledgment of more being due, from which a promise may be inferred as a matter of fact and not as a matter of law, to pay the remainder but the inference does not necessarily follow from the fact of payment alone. The payment must also be made to the creditor or to someone lawfully acting in his behalf. Wood on Limitations (3d Ed.), Sec. 97. See, also, *Kisler* v. *Sanders, supra; McBride, Executor* v. *Ulmer* (1902), 30 Ind. App. 154, 65 N. E. 610.

The question as to whether the payments in the instant case were made to one having authority to act for all of the heirs of Henry Meehan was a question of fact to be determined by the trial court, unless as contended for by the appellant it may be said as a matter of law that because Anna E. Meehan was later appointed administratrix of her father's estate her authority to represent the other heirs related back. By the weight of authority the doctrine of relation back as contended for by the appellant is recognized but we think that the evidence does not necessarily and conclusively show

that she received the payments. She made the five endorsements on the note but her mother, the widow of Henry Meehan, was likewise present when at least four of them were made and the trial court could reasonably have concluded that the evidence was not at all conclusive as to who actually received the money. If Anna did not receive the money, the doctrine of relation back would have no application. To whom the payments were actutlly made was a question of fact to be determined by the trial court from the evidence.

Upon the record as a whole we are convinced that there is competent evidence, together with legitimate inferences that may be drawn from such evidence, to sustain the decision of the trial court and that the decision is not contrary to law. The motion for a new trial was correctly overruled.

Judgment affirmed.